UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

=====================================
YEKUTIEL BASSUL individually and
all other similarly situated consumers

                    Plaintiff,

-against-

CAVALRY PORTFOLIO SERVICES, LLC

                    Defendant.
=====================================

## CLASS ACTION COMPLAINT
### *I.   Introduction*

1) Plaintiff Yekutiel Bassul files this Complaint seeking redress for the illegal practices of Defendant Cavalry Portfolio Services, LLC who, inter alia, used false, deceptive, and misleading practices, and other illegal practices, in connection with its attempts to collect an alleged debt from the Plaintiff and others, in violation of the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. § 1692, et seq. ("FDCPA").

### *II.   Parties*

2) At all times relevant to this lawsuit, Plaintiff is a citizen of the State of New York who resides within this District.

3) Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA.

4) The alleged debt that Defendant sought to collect from the Plaintiff involves a consumer debt.

-1-

5) At all times relevant to this lawsuit, Defendant's principal place of business is located within Valhalla, New York.

6) Defendant is regularly engaged upon, for profit, in the collection of allegedly owed consumer debts.

7) Defendant is a "debt collector" as specifically defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

### III.    Jurisdiction & Venue

8) Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

9) Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendant transacts business here.

### IV.    Factual Allegations

10) Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged consumer debt from the Plaintiff.

11) On or about June 30, 2017, Cavalry Portfolio Services, LLC sent a collection letter to the Plaintiff Yekutiel Bassul. (see attached exhibit)

12) Upon information and belief, the said letter was the Defendant's initial communication with the Plaintiff.

13) The said letter stated as follows: "We may report information about your account to credit reporting agencies."

14) The said June 30, 2017 letter misrepresented and contradicted the Plaintiff's right to dispute the debt under § 1692g and was deceptive in violation of 15 U.S.C. §§ 1692e and 1692e(10).

15) The said June 30, 2017 letter failed to explain that if such action is taken against the Plaintiff within the thirty day period, she will still be able to dispute the debt within that thirty day period.

16) The said June 30, 2017 letter does not refer to the consumer's right to dispute the debt and the language used in the letter implies a sense of urgency.

17) The implication of the language in the said June 30, 2017 letter would lead the least sophisticated consumer to ignore his or her right to use out the legally allotted thirty days to validate the debt and act immediately.

18) The least sophisticated consumer would be left in the dark as to whether or not he or she still had the right to dispute the debt within the thirty day validation time period.

19) Section 1692g(b) of the FDCPA states:

"[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

20) Such a statement that the Defendant would report information regarding the account to credit agencies was a tactic to scare the Plaintiff and the least sophisticated consumer into paying the debt immediately.

21) It is a violation of the FDCPA to include language in a letter that overshadows the required 15 U.S.C. § 1692g statement.

22) The said language overshadowed and contradicted the validation notice stated above it in the letter, and was misleading.

23) The Second Circuit has indicated that any reference to credit reporting in conjunction with the validation notice would overshadow a debtor's validation rights.

24) In fact, the Second Circuit found a significant concern even in a case where the threat to report was clearly going to occur after the 30-day validation period. The Second Circuit found that a statement on the front of a collection letter that stated if the debt was not paid <u>after</u> thirty days it would be forwarded to credit reporting agency when read in conjunction with the verification notice on the reverse side, could contradict the thirty-day verification notice. See [1] *McStay v. I.C. System, Inc.*, 308 F.3d 188, 191 (2d Cir.2002) (Finding Plaintiff's argument - that a debt collector's threat to report the debt to the *National Credit Reporting Agencies* after the 30 day validation period had overshadowed and contradicted the validation notice - was a significant argument but declined to consider the issue since it was raised for the first time on

---

[1] *Creighton v. Emporia Credit Serv., Inc.*, 981 F. Supp. 411 (E.D. Va. 1997) ("The least sophisticated debtor could reasonably interpret the notice as a demand for immediate payment or failure resulting in Defendant's *immediate* just cause to place the item on her credit report. Such an interpretation would circumvent the validation notification which requires a thirty-day period in which the claim may be disputed." The court noted that "Defendant claims that its statements do not demand payment "immediately" or "today." However, "your unpaid bill must be paid in full to this office upon receipt of this notice" is the equivalent to immediately". The court also found that "The notice states that "failure to pay in full when notified will be just cause to place this item on your credit record." Defendant argues that this just means that there is a possibility of this happening and not a threat that the collector will do so. This distinction is not persuasive because, if it means that they could do so, it is deceptive, since the thirty-day dispute requirement would prevent doing so immediately."); *Perdue v. United Credit Mgmt. Corp.* 2000 U.S. Dist. LEXIS 1502 (N.D. Ill. Feb. 9, 2000) ("This possible confusion is heightened by the fact that the "Adverse Action Notice" at the very bottom page indicates only that the account "*may be reported to … credit reporting agencies*." No mention is made of when this may occur. It may be that a person with sufficient background in the Fair Debt Collection Practices Act would know that the threat of reporting cannot legally interfere with the debtor's right to challenge the debt, but whether the unsophisticated consumer would realize this is subject to dispute. Therefore, the Court cannot now find the letter not confusing. The motion to dismiss is denied."); *Vaughn v. CSC Credit Servs.*, 1994 U.S. Dist. LEXIS 2172, at *24 (N.D. Ill. Feb. 28, 1994) ("CSC's assertion that the letter does not threaten any negative action because it states that the "account could be added to your credit bureau record" and does not actually threaten action will be taken, is unconvincing. The message conveyed by a collection letter is viewed as the least sophisticated consumer would view it. *Clomon v. Jackson,* 988 F.2d 1314, 1318-20 (2nd Cir. 1993). The implication to even a sophisticated consumer is that it CSC will take action. There is no reason for the consumer to think that CSC is making an idle comment with no intent to follow through. The threat is clear; pay or lose your good credit. "The form thus represents an attempt 'on the part of the collection agency to evade the spirit of the notice statute and mislead the debtor into disregarding the [required debt] validation notice."); *Peters v. Collection Tech. Inc.*, 1991 U.S. Dist. LEXIS 21810 (D. Or. Dec. 5, 1991) ("The May letter includes a validation notice in finer print that is relegated to the bottom of the page. Unlike the one-third smaller print in *Swanson*, the validation notice in the May letter is only a slightly smaller print. However, the May letter states that "payment in full is expected at once" and that the agency "report[s] all unpaid accounts to TRW Credit Data within 30 days of [the] notice." Furthermore, the May letter extols the debtor to "mail or bring this notice to our office with full payment today." The content of the May letter appears misleading by requesting immediate payment of the debt. An unsophisticated debtor, and even an average debtor, may be prompted to ignore the debtor's statutory right to verify the debt in thirty days and instead pay immediately to avoid unfavorable credit reports in the debtor's credit file.")

appeal.)

25) In addition, the said language is including, but not limited to, a threat to take unintended an action that is beyond letter communications.

26) Upon information and belief, the Defendant did not intend to report Plaintiff's account to any credit reporting agency.

27) Defendant's June 30, 2017 letter is in violation of 15 U.S.C. §§ 1692e, 1692e(5), 1692e(8), 1692e(10), 1692f and 1692g, for making false and deceptive threats of credit reporting by stating false credit information which further overshadowed the Plaintiff's validation rights.

28) Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the Defendant.

29) Plaintiff suffered actual harm by being the target of Defendant's misleading debt collection communications.

30) The Plaintiff alleges and avers that Defendant violated the Plaintiff's right not to be the target of misleading debt collection communications.

31) The Plaintiff alleges and avers that Defendant violated the Plaintiff's right to a truthful and fair debt collection process.

32) The Plaintiff alleges and avers that Defendant used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

33) The Plaintiff alleges and avers that Defendant's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to the Defendant's collection efforts.

34) The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. The Plaintiff alleges and avers that Defendant's false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits, these materially misleading statements trigger liability under section 1692e of the Act.

35) These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

36) Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment. Plaintiff and putative class members are entitled to preliminary and permanent injunctive relief, including, declaratory relief, and damages.

### V.  Class Allegations

37) This action is brought as a class action. Plaintiff brings this action individually, and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

38) The identities of all class members are readily ascertainable from the records of the Defendant and those business and governmental entities on whose behalf it attempts to collect debts.

39) Excluded from the Plaintiff's Class are the Defendant and all officers, members, partners, managers, directors, and employees of the Defendant, and all of

their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

40) There are questions of law and fact common to the Plaintiff's Class, which common issues predominate over any issues involving only individual class members. The principal issues are whether the Defendant's communications with the Plaintiff, such as the above stated claims, violate provisions of the Fair Debt Collection Practices Act.

41) The Plaintiff's claims are typical of the class members, as all are based upon the same facts and legal theories.

42) The Plaintiff will fairly and adequately protect the interests of the Plaintiff's Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests, which might cause him not to vigorously pursue this action.

43) This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

(a) **Numerosity:** The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff's Class defined above is so numerous that joinder of all members would be impractical.

(b) **Common Questions Predominate:** Common questions of law and fact exist as to all members of the Plaintiff's Class and those questions predominate over any questions or issues involving only individual class members. The principal

issues are whether the Defendant's communications with the Plaintiff, such as the above stated claims, violate provisions of the Fair Debt Collection Practices Act.

    (c)    **Typicality:** The Plaintiff's claims are typical of the claims of the class members. Plaintiff{s} and all members of the Plaintiff's Class defined in this complaint have claims arising out of the Defendant's common uniform course of conduct complained of herein.

    (d)    **Adequacy:** The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests, which might cause him not to vigorously pursue the instant class action lawsuit.

    (e)    **Superiority:** A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender Certification of a class under Rule 23(b)(l)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Defendant who, on information and belief, collects debts throughout the United States of America.

44) Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that a determination that the said violations are tantamount to declaratory relief and any monetary relief under the FDCPA would be merely incidental to that determination.

45) Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff's Class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

46) Further, Defendant has acted, or failed to act, on grounds generally applicable to the Rule (b)(l)(A) and (b)(2) Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

47) Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify one or more classes only as to particular issues pursuant to Fed. R. Civ. P. 23(c)(4).

### VI.  Cause of Action

48) This cause of action is brought on behalf of Plaintiff and the members of a class of whom Defendant's records reflect resided in the State of New York:

    a) who were sent a collection letter in substantially the same form letter as the letter sent to the Plaintiff;

    b) within one year prior to the date of the within complaint up to and including the date of the filing of this complaint;

c) the collection letter was sent to a consumer seeking payment of a personal debt;

d) the collection letter was not returned by the postal service as undelivered;

e) the Plaintiff alleges and avers that the letter contained violations of 15 U.S.C. §§ 1692e, 1692e(5), 1692e(8), 1692e(10), 1692f and 1692g, for making false and deceptive threats of credit reporting by stating false credit information which further overshadowed the Plaintiff's validation rights.

### *VII.    Violations of the Fair Debt Collection Practices Act*

49) The Defendant's actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

50) As a direct and proximate result of these violations of the above FDCPA violations, Plaintiff and class members have suffered harm and are entitled to preliminary and permanent injunctive relief, and to recover actual and statutory damages, costs and attorney's fees.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment in Plaintiff's favor and against the Defendant and award damages as follows:

a) Statutory and actual damages provided under the FDCPA, 15 U.S.C. § 1692(k); and

b) Attorney fees, litigation expenses and costs incurred in bringing this action; and

c) An order enjoining and directing Defendant to comply with the FDCPA in its debt collection activities, including without limitation:

        Directing Defendant to cease engaging in debt collection practices that violate the FDCPA; and

d) Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Brooklyn, New York
July 2, 2018

      /s/ David Palace_____
      **Law Offices of David Palace** (DP 3855)
      383 Kingston Ave. #113
      Brooklyn, New York 11213
      Telephone: 347-651-1077
      Facsimile: 347-464-0012

Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.

      /s/ David Palace_____
      David Palace esq. (DP 3855)



PO Box 520
Valhalla, NY 10595

Phone: (866) 434-2995 • FAX: (914) 747-3673
www.cavps.com



June 30, 2017

RE: Original Institution:          Citibank, N.A./AAdvantage
    Original Account No.:          Redacted 147
    Cavalry Account No.:           Redacted 43
    Charge off balance:            $19307.88
    Interest since charge off:     $.00
    Other Charges or Fees since    $.00
    charge off:
    Payments since charge off:     $.00
    Outstanding Balance:           $19006.08*

Yekutiel Bassul
Redacted

Regulation of the New York State Department of Financial Services requires us to tell you: Cavalry, in accordance with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., is prohibited from engaging in abusive, deceptive, and unfair debt collection efforts, including but not limited to: (i) the use or threat of violence; (ii) the use of obscene or profane language; and (iii) repeated phone calls made with the intent to annoy, abuse, or harass.

Dear Yekutiel Bassul:

Cavalry SPV I, LLC purchased the Citibank, N.A./AAdvantage account listed above and is now the creditor for the account. Cavalry SPV I, LLC has referred the account to Cavalry Portfolio Services, LLC ("Cavalry") for servicing.

Cavalry is committed to providing you with excellent customer service, which includes treating you in a fair and respectful manner. If at any time you feel that you have not been provided with excellent customer service, please call us at (866) 483-5139.

We understand that all of the account balance may not be repaid at this time. If some of the bill can be repaid, even if it is through a monthly payment plan, we would like to hear from you. We work with our customers to find affordable repayment arrangements. Please call us at (866) 483-5139 to discuss your repayment options.

Unless you notify Cavalry within thirty days after receiving this letter that you dispute the validity of this debt or any portion thereof, Cavalry will assume this debt is valid. If you notify Cavalry in writing within thirty days from receiving this notice that you dispute the validity of this debt or any portion thereof, Cavalry will obtain verification of the debt or a copy of a judgment, if applicable, and mail you a copy of such verification or judgment. If you request it from Cavalry in writing within thirty days after receiving this notice, Cavalry will provide you with the name and address of the original creditor, if different from the current creditor.

Sincerely,

Christine Acosta
Cavalry Portfolio Services, LLC

* The amount you owe is the amount stated at the top of this letter as Outstanding Balance. Any difference between the Charge Off Balance, and the Outstanding Balance, is due to the application of credits to your account prior to the date of this letter.

We may report information about your account to credit reporting agencies.

Regulation of the New York State Department of Financial Services requires us to tell you: If a creditor or debt collector receives a money judgment against you in court, state and federal laws may prevent the following types of income from being taken to pay the debt: 1. Supplemental security income, (SSI); 2. Social security; 3. Public assistance (welfare); 4. Spousal support, maintenance (alimony) or child support; 5. Unemployment benefits; 6.

**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR. SEE REVERSE SIDE FOR IMPORTANT INFORMATION CONCERNING YOUR RIGHTS.**

